J-A12021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS PERKINS, III AND DONNA SNYDER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2039 EDA 2017 |
| VENEZIA ENTERPRISES, FRANK VENEZIA, JOHN J. VENEZIA AND ANDREW VENEZIA | : | |

Appeal from the Order Entered June 5, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2006-07884

BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                **FILED DECEMBER 20, 2018**

Thomas Perkins, III, and Donna Snyder, brother and sister (collectively, "Perkins") appeal from the order entered on June 5, 2017, in the Court of Common Pleas of Montgomery County, granting summary judgment to Venezia Enterprises, Frank Venezia, John J. Venezia, and Andrew Venezia (collectively, "Venezia"), and dismissing their fraudulent misrepresentation or concealment, negligent misrepresentation or concealment, and violation of Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[1] claims.  The underlying action stems from the sale of commercial real estate from Venezia

---

[1]  **See** 73 P.S. § 201-1, *et seq*.  As will be discussed *infra*, Perkins does not assert any argument involving the UTPCPL claim, therefore, it is waived for purposes of this appeal.

to Perkins, in which Perkins alleged Venezia misrepresented the actual acreage of the property at issue, which induced them to enter into an Agreement of Sale for the same. Perkins now claim the trial court erred and/or abused its discretion regarding the following: (1) by granting motions *in limine* which duplicated, in terms of issues, facts, law, and request for relief, a motion for summary judgment previously denied by a judge of coordinate jurisdiction; (2) by granting the motion *in limine* which, based on the gist-of-the-action doctrine, did not preclude any evidence, but rather barred [Perkins]' recovery pursuant to their tort claims; and (3) by granting the motion *in limine* which, based on the parol evidence rule, precluded all evidence which could in any way support [Perkins]' fraud in the inducement claim, including representations made within the agreement. **See** Perkins' Brief at 4-5. Perkins also claims the court erred in granting summary judgment based on these arguments. **Id.** For the reasons below, we affirm.

The trial court summarized the relevant facts as follows:

[Perkins'] agent/realtor, Anthony Giamo, contacted Frank Venezia inquiring whether Venezia would be interested in selling the property located at 703 W. Ridge Pike, Limerick, Pennsylvania. [Venezia's] property was not listed for sale at the time. After some conversation, [Venezia] agreed to sell the Property to [Perkins] for $960,000. During the parties' meeting, [Perkins] allege that there was discussion concerning the actual acreage of the property. The tax map indicated that the property was 9.89 acres but Mr. Venezia allegedly orally claimed that the property was slightly less—9.3 acres. Despite this confusion, [Perkins'] realtor prepared an Agreement of Sale and inserted 9.3 acres in the Agreement. [Perkins'] agent inserted 9.3 acres in the Agreement based solely upon [Venezia's] alleged oral assertion. [Perkins] conducted no independent confirmation of the acreage.

On January 19, 2001, the parties executed the Agreement of Sale. [Venezia was] not represented by a realtor. On that same day, the parties added an Addendum to the Agreement of Sale which included a 90 day due diligence clause which allowed [Perkins] 90 days to conduct due diligence including a survey. [Perkins] failed to conduct a survey within those 90 days. In 2004, [Perkins] conducted a survey of the property in connection with a zoning application and learned that the property was only 7.6 acres. The present law suit followed.

In their Amended Complaint, [Perkins pled] tort claims, namely, Count [I] – Fraudulent Misrepresentation or Concealment and Count II – Negligent Misrepresentation or Concealment.[1] [Perkins] did not plead breach of contract under the Agreement of Sale because they believed that the statute of limitations had run on the same, and because[] they did not believe that there was a breach of the actual contract terms.

_____

[1]   [Perkins] also ple[d] Count III – Violation of the [UTPACPL]. However, Count III is not at issue herein. The [UTPACPL] does not apply to commercial properties like the one at bar, and [Perkins] conceded and/or waived any argument contra.

_____

[On February 17, 2016, Venezia filed a motion for summary judgment, alleging, *inter alia*, Perkins' tort claims should be dismissed based on: (1) the "gist of the action" doctrine and (2) due to the integration clause contained in the Agreement of Sale, Perkins cannot rely on oral representations made by Venezia where the contract states that no such representations are included in the terms of the document. Perkins filed a response on March 24, 2016, as well as a cross-motion seeking judgment.

On July 1, 2016, the Honorable Richard P. Haaz denied both parties' motions for summary judgment without explanation. The matter was then transferred to the Honorable Carolyn Tornetta Carluccio.

On May 15, 2017, Venezia filed a motion *in limine*, requesting the trial court to preclude Perkins' recovery on the tort claims under the "gist of the action" doctrine. Additionally,

> Venezia sought to preclude any evidence related to Perkins' fraud-in-the-inducement claims based on the integration clause set forth in the Agreement of Sale.]
>
> On June 2, 2017, after argument and review of briefs, the trial court granted [Venezia's] [m]otion [*in limine*] to [p]reclude [r]ecovery under [a]ny and [a]ll [t]ort [c]laims in the above captioned matter. In addition[,] the trial court also granted [Venezia's] [m]otion to [p]reclude any [e]vidence relating to [f]raud in the [i]nducement as the [a]greement of [s]ale was a fully integrated document.

Trial Court Opinion, 11/22/2017, at 1-2 (emphasis in original, citations omitted). Subsequently, on June 5, 2017, the trial court granted Venezia's oral motion for summary judgment. Perkins filed this timely appeal.[2]

On appeal, with respect to all of their arguments, Perkins contend the trial court abused its discretion in granting Venezia's motion *in limine*, and consequently, their motion for summary judgment. **See** Perkins' Brief at 3-4.

Our standard of review is well-settled:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.
>
> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest

---

[2] On July 6, 2017, the trial court ordered Perkins to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Perkins filed a concise statement on July 29, 2017. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 22, 2017.

unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690-691 (Pa. Super. 2014) (citations omitted), *appeal denied*, 123 A.3d 331 (Pa. 2015), *cert. denied*, 136 S. Ct. 557 (U.S. 2015). Moreover, because the trial court's grant of Venezia's motion *in limine* formed the basis for its subsequent grant of Venezia's motion for summary judgment, we are also guided by the following:

We review an order granting summary judgment for an abuse of discretion or error of law. *Indalex, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 PA Super 311, 83 A.3d 418, 420 (Pa. Super. 2013). Our standard of review is plenary, and we view the record in the light most favorable to the nonmoving party. *Id.* A party bearing the burden of proof at trial is entitled to summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]" Pa.R.C.P. 1035.2(1). In response to a summary judgment motion, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact. Pa.R.C.P. 1035.3.

*Vetter v. Miller*, 157 A.3d 943, 948 (Pa. Super. 2017), *appeal denied*, 182 A.3d 987 (Pa. 2017).

In their first argument, Perkins claim the court "failed to adhere to the coordinate jurisdiction rule in granting the motions *in limine* which served as the basis for the dismissal of Perkins' fraudulent and negligent misrepresentation claims." **See** Perkins' Brief at 18. By way of background, they state:

- 5 -

Nearly a year before Judge Carluccio issued her ruling, on July 5, 2016, Judge Haaz, who did not preside over the trial phase of the case, ruled on cross -motions for summary judgment. Within their motion for summary judgment, Venezia requested the entry of summary judgment in its favor related to Perkins' claims for fraudulent and negligent misrepresentation. Venezia alleged that gist-of-the-action doctrine barred those claims as a matter of law, and that the underlying contract is integrated thereby also barring Perkins from presenting any evidence which could prove fraud-in-the-inducement. Based on Venezias' motion and brief, Perkins' response and brief, and after oral argument, Judge Haaz denied Venezias' motion for summary judgment on all counts, including but not limited to the gist -of -the -action doctrine and the parol evidence rule. Judge Haaz permitted Perkins' claims to proceed to trial, and the case was then reassigned to Judge Carluccio for the trial phase.

On May 15, 2017, Venezia filed with Judge Carluccio a motion *in limine* titled, "Defendants' Motion *in limine* to Preclude Recovery Under Any and All Tort Claims."

*Id.* at 19-20 (reproduced record citations omitted).

Relying on ***Campbell v. Attanasio***, 862 A.2d 1282 (Pa. Super. 2004),

*appeal denied*, 881 A.2d 818 (Pa. 2005), Perkins allege:

As is evident from their prayer for relief, Venezia's motion *in limine* is nothing more than a reconstituted motion for summary judgment.

…

The motions *in limine* did not present any new evidence, let alone a substantial change in the facts. Likewise, Venezia did not present any new case law, let alone an intervening change in the controlling law. Absent a substantial change in the facts or an intervening change in the controlling law, the coordinate jurisdiction rule required Judge Carluccio to afford Judge Haaz's denial extreme deference, and hold the defense to a strict burden of persuasion. Judge Carluccio failed to do so, and therefore did not properly evaluate Judge Haaz's ruling against the clearly erroneous standard of review. This deprived Perkins of their right

to a trial against Venezia, and it was thus Perkins who suffered the "manifest injustice."

***Id.*** at 21, 24-25 (reproduced record citations omitted).

The Pennsylvania Supreme Court has explained the coordinate jurisdiction rule as follows:

> One of the distinct rules that are encompassed within the "law of the case" doctrine is the coordinate jurisdiction rule. Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions. The reason for this respect for an equal tribunal's decision ... is that the coordinate jurisdiction rule is based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. Furthermore, consistent with the law of the case doctrine, the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation.

***Zane v. Friends Hosp.***, 836 A.2d 25, 29 (Pa. 2003) (internal citations and footnote omitted).

In addressing Perkins' argument, the trial court noted:

> [T]o the extent that [Perkins] argue that the trial court improperly entered summary judgment herein due to the previous cross-summary judgment rulings in this matter, the trial court refers the appellate court to ***Nobles v. Staples, Inc.***[,] 150 A.[3]d 110 (Pa. Super. 2016). In addition, as stated on the record, a motion for summary judgment and a motion *in limine* require two different standards of review. (Notes of Testimony 5/31/17, pg. 3)[.] Finally, the parties herein conceded that the question before the court concerning the gist of the action was a question of law. (Id. at pgs. 13-14)[.]

Trial Court Opinion, 11/22/2017, at 3 n.2.

- 7 -

In **Nobles**, **supra**, the plaintiff filed a personal injury action against the defendant. **Nobles**, 150 A.3d at 112. The defendant moved for summary judgment, which was denied without prejudice by the Honorable Annette M. Rizzo because the motion had been filed prior to the expiration of the discovery period. **Id.** Subsequently, the defendant moved again for summary judgment, repeating the same ground as in its first motion. **Id.** The Honorable Federica Massiah-Jackson entered an order denying the motion, without further comment. **Id.** The defendant then filed two motions *in limine*, asserting similar grounds to the motions for summary judgment. **Id.** at 112-113. The Honorable Mary D. Colins heard argument on the two motions *in limine* and granted both. **Id.** at 113. In light of those decisions, the trial judge granted the defendants' motion to dismiss the action. **Id.** On appeal, the plaintiff alleged it was a "violation of the coordinate jurisdiction rule for a trial court to grant a motion for non-suit, which it deemed a motion for summary judgment, after the court had already denied a motion for summary judgment[.]" **Id.** In affirming the trial court's decision, a panel of this Court stated:

> In the current action, once Judge Colins granted [the defendant's] motions *in limine*, the status of the case changed materially. Therefore, the basis upon which Judge Colins granted the final motion for summary judgment was very different from the bases upon which Judge Rizzo and Judge Massiah-Jackson relied when they denied [the defendant's] first and second motions for summary judgment several months earlier. Once Judge Colins held that [the plaintiff's] expert would not be allowed to testify, it became clear that there was no viable way in which [the plaintiff] could recover — as [the plaintiff's] counsel himself admitted when

he told Judge Colins that she had "put us out of court." **See** Trial Court Opinion, 2/9/16, at 5-6. Accordingly, it was appropriate for Judge Colins to then grant [the defendant's] motion to dismiss the case, even if that motion was the equivalent of a third motion for summary judgment. In doing so, the trial court did not violate the coordinate jurisdiction rule.

**Nobles**, 150 A.3d at 119-20.

In **Campbell**, **supra**, the defendants filed motions for summary judgment wherein they sought to preclude the defendant's expert from testifying at trial. **Campbell**, 862 A.2d at 1284. The trial judge denied the motions. **Id.** at 1285. The defendants subsequently filed motions *in limine*, in which they raised the same issue as presented in the motions for summary judgment. **Id.** The matter was transferred to a second judge, who granted the motions *in limine*. That judge then dismissed the action in its entirety. On appeal, a panel of this Court determined the coordinate jurisdiction rule was violated because: (1) both sets of motions raised the same issue; and (2) there was no indication that the second judge "considered additional facts or evidence that had not been presented to" the first judge. **Id.** at 1287.

Turning to the present matter, we agree with the trial court that **Nobles** is applicable, and we find **Campbell** is distinguishable. In **Ryan v. Berman**, 813 A.2d 792 (Pa. 2002), the Pennsylvania Supreme Court stated: "Where the motions differ in kind, as preliminary objections differ from … motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." **Ryan**, 813 A.2d at 794, *quoting* **Goldey v. Trustees of University of**

*Pennsylvania*, 675 A.2d 264, 267 (Pa. 1996). As pointed out by the trial court, a motion for summary judgment and a motion *in limine* require two different standards of review and therefore, are motions that differ in kind. *See Ryan*, *supra*. Moreover, unlike in *Campbell*, we find dispositive that, here, while Judge Haaz denied Venezia's motion for summary judgment, he did so without providing any explanation regarding his determination. It is unknown whether Judge Haaz made that finding because the discovery period had not ended, a procedural defect, or for some reason other than the viability of the claims presented by Venezia. If so, then the coordinate jurisdiction rule would not bar Judge Carluccio from ruling on the merits of the substantive claims set forth in their motions *in limine*.[3] As such, given these specific circumstances, particularly the lack of clarification from Judge Haaz, we are compelled to conclude that the coordinate jurisdiction rule was not implicated in this case. *See Nobles*, *supra*.[4]

Next, Perkins contends its "tort claims are not barred by the gist-of-the-action doctrine as the claims assert misfeasance rather than nonfeasance; the claims are deception, not a failure to perform pursuant to a contract." Perkins' Brief at 26. They state:

---

[3] Further, as the trial court noted, and the parties agreed, the gist of the action doctrine argument was a legal question that needed to be decided before the trial.

[4] *See also Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1170 (Pa. Super. 1988).

- 10 -

Perkins filed claims for fraudulent and negligent misrepresentation. The gist of Perkins' claims is deception by Venezia, not that Venezia failed to perform pursuant to the Agreement. Stated another way, the substance of Perkins' claims is not that Venezia failed to deliver, pursuant to the Agreement, a property 9.3 acres in size. Rather, the substance of the claims is that there would be no contract [] but for Venezias' gross misrepresentation of the size of the property, which at best were negligent and at worst intentional.

*Id.* at 31 (reproduced record citation omitted).[5] For example, Perkins points to the following allegations in their amended complaint as the basis for the fraudulent misrepresentation or concealment claim:

14. At the meeting, [Perkins' real estate agent] indicated that he felt that the Property was approximately 9.9 acres in size.

15. At the meeting, Defendant Frank Venezia represented that the Property was not 9.9 acres, but in fact was slightly smaller.

16. After the meeting, Defendant Frank Venezia contacted [Perkins' real estate agent] and indicated that the size of the Property was 9.3 acres.

17. [Perkins] subsequently met with Defendant Frank Venezia to inspect the Property, at which time Defendant Frank Venezia

---

[5] "A cause of action for fraudulent misrepresentation is comprised of the following elements: '(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result.'" ***Martin v. Lancaster Battery Co.***, 606 A.2d 444, 448 (Pa. 1992), *quoting* ***Scaife Co. v. Rockwell-Standard Corp.***, 285 A.2d 451, 454 (Pa. 1971), *cert. denied*, 407 U.S. 920 (1972). The tort of negligent misrepresentation has the following elements: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." ***Bortz v. Noon***, 729 A.2d 555, 561 (Pa. 1999) (citation omitted).

represented to Plaintiff Donna L. Snyder that the size of the Property was 9.3 acres.

18. The Agreement of Sale entered into by the parties represents that the Property is "…two parcels totalling 9.3 acres of land plus buildings."

19. At the time of the purchase of the Property, [Venezia] affirmatively represented, both orally and in writing, that the Property consisted of 9.3 acres of land.

20. [Venezia] knew that their representations that the Property was 9.3 acres in size were false and intended that [Perkins] would be induced by these false misrepresentations to execute an Agreement of Sale for the purchase of the Property and to proceed to closing on said Agreement of Sale.

21. [Venezia] knew that the size of the Property was a material fact in the transaction described in this Complaint and the[y] were obligated to disclose the true facts regarding the size of the Property but intentionally misrepresented and/or deliberately concealed the true quantity of land.

22. [Perkins] believed and reasonably relied upon [Venezia's] misrepresentations as to the size of the Property and proceeded to purchase the Property from [Venezia] for the amount of Nine Hundred Sixty Thousand Dollars ($960,000.00). A true and correct copy of the Deed to the Property is attached hereto, incorporated herein and marked as Exhibit "C".

23. [Perkins] took possession of the Property and commenced use as headquarters of TP Trailers, Inc.

24. After making inspections of the land, [Perkins] had a survey performed which revealed that the Property was only 7.6 acres in size, not the 9.3 acres previously falsely represented by [Venezia].

…

27. [Venezia], by knowingly and intentionally making false representations of material facts about the Property, to wit, fraudulent misrepresentations as to the size of the Property, and by engaging in the deliberate concealment of material facts, induced [Perkins] to execute an Agreement of Sale for the

purchase of the Property and to proceed to closing on said Agreement of Sale.

28. [Venezia] acted with the intentions that [Perkins] would rely on said misrepresentations or concealments of material facts regarding the size of the Property in executing an Agreement of Sale to purchase the Property and in proceeding to closing on said Agreement of Sale.

29. [Venezia's] misrepresentations and/or concealments concerned presently existing facts which are material to the decision of [Perkins] to execute an Agreement of Sale[] to purchase the Property and to proceed to closing on said Agreement of Sale.

30. [Venezia], by their intentional misrepresentations and deliberate and fraudulent concealments of material facts, induced [Perkins] to execute an Agreement of Sale to purchase the Property, to proceed to closing on said Agreement of Sale and lulled [Perkins] into thinking they had not been defrauded.

31. [Perkins] justifiably relied upon [Venezia's] misrepresentations and/or concealments of material facts in concluding that the Property was 9.3 acres in size and executed the Agreement of Sale and proceeded to closing on said Agreement of Sale.

32. [Perkins] have been injured as a proximate cause of [Venezia's] fraudulent misrepresentations and concealments of material facts in that they purchased property materially different from that which was represented to them, to wit, the size of the Property is significantly smaller than was represented to them.

Amended Complaint, 5/10/2007, at 4-7. Based on allegations set forth in their amended complaint, Perkins asserts their claims for fraudulent and negligent misrepresentation sound in tort and implicate a social duty not to affirmatively mislead or advise without a factual basis. Perkins' Brief at 34. Lastly, Perkins states:

the essence of Perkins' claims, at every stage of this litigation, has been and will continue to be that Venezia knew or should have known that the property is 7.6 acres, knew the size of the property was material the transaction, but nevertheless misrepresented the size of the property as 9.3 acres in order to induce Perkins to purchase the property for $960,000. The duties allegedly breached are ones of fair-dealing and honesty; overarching societal duties.

*Id.* at 37-38.

With respect to the "gist of the action" doctrine, we note:

Where ... a tort claim arises from an initial contractual relationship, tort recovery is permitted:

In general, courts are cautious about permitting tort recovery based on contractual breaches. In keeping with this principle, this Court has recognized the "gist of the action" doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims.

*Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 18 (Pa. Super. 2014) (citation omitted). As explained in *Reardon v. Allegheny College*, 926 A.2d 477 (Pa. Super. 2007), *appeal denied*, 947 A.2d 738 (Pa. 2008):

The gist of the action doctrine acts to foreclose tort claims: 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; [or] 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of breaches of duties imposed by mutual consensus agreements between particular individuals, while the latter arises out of breaches of duties imposed by law as a matter of social policy.

*Reardon*, 926 A.2d at 486-87 (internal citation and quotations omitted); *accord* **Hart v. Arnold**, 884 A.2d 316, 339-340 (Pa. Super. 2005), *appeal denied*, 897 A.2d 458 (Pa. 2006).

More recently, a panel of this Court opined:

To determine whether a complaint sounds a claim in contract or in negligence, courts in Pennsylvania have used an evolving doctrine known as the "gist of the action" doctrine. **See Bruno v. Erie Ins. Co.**, 630 Pa. 79, 106 A.3d 48, 61-62 (Pa. 2014); **Zell v. Arnold**, 2 Pen. & W. 292 (Pa. 1830); **Homey v. Nixon**, 213 Pa. 20, 61 A. 1088 (Pa. 1905); **Bash v. Bell Tel.**, 411 Pa. Super. 347, 601 A.2d 825 (Pa. Super. 1992); **eToll Inc. v. Elias/Savion Adver.**, 2002 PA Super 347, 811 A.2d 10 (Pa. Super. 2002). In **Bruno**, the Supreme Court articulated the legal principles a court must use to determine the gist of the action doctrine, stating that a court must make a duty-based inquiry to determine whether the claim is in tort or contract:

The substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

**Bruno**, 106 A.3d at 68. Thus, if the claim offered is for a breach of a specific promise in the contract, then the claim will lie in contract[,] as the duty of the parties are purely contractual. However, if the claim is not based on the specific contractual promise, but rather on a duty that is owed independent of any contractual promises, then the claim will lie in tort, even if the parties' relationship originates from the contract.

*Kelly Sys., Inc. v. Leonard S. Fiore, Inc.*, ___ A.3d ___, 2018 PA Super 393, ¶¶ 11-12 [1714 WDA 2017] (Pa. Super. Oct. 31, 2018).

Here, the trial court found the following:

At bar, the court determined that the duties between the parties arise from the terms of the negotiated contract between the parties. As indicated on the record,

THE COURT: I want to get back to you. If the contract says you are selling 9.6 acres of land---

MR. GARNER: 9.3

THE COURT: 9.3 and there is only 7.6, How is that not a breach of contract?

MR. GARNER: It's not.

THE COURT: If I say, I am selling you ten widgets, and I only give you six widgets, is that a breach of contract? I only convey six, you accept them, and move on, my contract said ten.

MR. GARNER: I guess under the way you are posing it, you could consider that a breach.

*(Notes of Testimony 5/31/17, pgs. 110-11)*

Thus, the court determined that the action arose from the contract between the parties; the duties between the parties were created and grounded in the contract itself; the liability stemmed from the contract; and any tort claims duplicated the contract claim. The gist of the Plaintiffs' claim/action was that the Defendants failed to deliver property 9.3 acres in size as promised in the Agreement of Sale.

Trial Court Opinion, 11/22/2017, at 5-6.

Upon review, we agree with the trial court's analysis. We find **Hart**, **supra**, instructive in this matter. In **Hart**, the case involved a contract

between the two sets of adjacent property owners, where the plaintiff-seller agreed to deed approximately 55 acres of land to the defendant-purchasers in exchange for construction of a dam to create a lake, to be completed by the defendant-purchasers, which would, among other things, enhance the value of plaintiff-seller's remaining land. *Hart*, 884 A.2d at 322-323. However, the same year the contract was signed, it became obvious the required permits for the lake were no longer valid, which affected the ability of defendant-purchasers to build the lake to the size and depth as contemplated by the parties. *Id.* The defendant-purchasers then attempted to get permission to build a lake as large as originally planned but did not notify the plaintiff-seller. *Id.* Their efforts were unsuccessful, and they had to reduce the size of the lake, which adversely affected the value of plaintiff-seller's property more than the defendant-purchasers. *Id.* at 324. In determining plaintiff-seller's fraud in the performance cause of action was barred by the gist of the action doctrine, a panel of this Court determined:

> [Plaintiff-seller's] claims of fraud in the performance of the contract are integrally related to his breach of contract claims. The performance duties arose solely from the contract between the parties and were created and grounded in the contract itself. Further, these claims essentially duplicate [Plaintiff-seller's] breach of contract claim and the success of his fraud-in-the-performance claims is wholly dependent on the terms of a contract. Thus, [Plaintiff-seller's] fraud in the performance claims are barred under the gist of the action doctrine, because they are collateral to the contract, which is the main cause of action.

*Hart*, 884 A.2d at 341 (citations omitted).

Turning to the present matter, it is quite evident that Perkins' claims arise from its contractual relationship it had with Venezia, as there was a "specific promise" to deliver the property at issue, totaling 9.3 acres, and Venezia failed to do so. **Bruno**, 106 A.3d at 68. The facts do not establish that Venezia committed a "violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract[.]" **Id.** Like **Hart**, the "performance duties arose solely from the contract between the parties and were created and grounded in the contract itself." **Hart**, 884 A.2d at 341. Moreover, significantly, with respect to Perkins' fraudulent and negligent misrepresentation claims, Perkins did not conduct their own independent confirmation of the acreage. The Agreement of Sale included an addendum, which permitted Perkins to conduct due diligence for 90 days, including obtaining a survey of the property. Perkins, however, failed to act within those 90 days, or even before settlement. Therefore, we find Perkins' claim is properly viewed as an action on the contract, and their allegations of fraudulent and negligent misrepresentation are barred by the gist-of-the-action doctrine. Furthermore, the court did not err and/or abuse its discretion in granting summary judgment on the claim as there was no genuine issue of any material fact as to a necessary element of the cause of action. Accordingly, Perkins' second claim fails.

Next, Perkins claim the court's dismissal of their fraud-in-the-inducement claim based on the parol evidence rule constituted both an error

of law and abuse of discretion because the rule does not bar misrepresentations contained in the agreement itself, and the consistent oral misrepresentations would not be presented to vary, modify or supersede the agreement. *See* Perkins' Brief at 38. Specifically, they argue:

> Venezia misrepresented the size of the property at least four times; twice orally prior to executing the Agreement, once in the initial Agreement, and once again in the agreement's Addendum. Consequently, regardless of the admissibility of the oral statements, the written Agreement and Addendum contain the misrepresentations. Namely, both the Agreement and the Addendum mis[re]present the size of the property as 9.3 acres, without qualification.
>
> The misrepresentations contained in the agreement are beyond the reach of the parol evidence rule, and are sufficient to allow a jury to find in favor of Perkins with respect to the relevant elements of their fraud -in -the -inducement claim. As a result, the parol evidence rule cannot possibl[y] serve to preclude "any and all evidence related" to the fraud-in-the-inducement claim, and entitle Venezia to summary judgment on that claim.
>
> Furthermore, the parol evidence rule cannot serve to preclude Venezias' oral misrepresentations because those statements would not be entered into evidence to "vary, modify, or supersede" the terms of the agreement. Those oral misrepresentations are wholly consistent with the terms of the contract which also misrepresent the size of the property as 9.3 acres, without qualification. The statements do not change in any way the misrepresentations contained in the agreement. Instead, the statements would be offered for reasons including but not limited to demonstrating to the jury the scope of the fraud, and would be relevant to Perkins' claim for punitive damages as they help establish a pattern of misrepresentation and thus the outrageousness of Venezias' conduct.
>
> Lastly, the contract itself does not bar the introduction of the oral misrepresentations because the integration clause states in relevant part:

In entering into this Agreement, [Perkins] has not relied upon any representations, claims ... made by [Venezia], Agents, or their employees **unless expressly incorporated or stated in this Agreement.**

**See R.R.** at 309 (emphasis added).

**Id.** at 42-43 (some citations omitted).

We are guided by the following:

[F]raud-in-the-inducement claims are commonly barred if the contract at issue is fully integrated. [**Blumenstock v. Gibson**, 811 A.2d 1029, 1035 (Pa. Super. 2002)]. The rationale for this rule of law is "that a party cannot justifiably rely upon prior oral representations" and then sign a contract containing terms that refute the alleged prior oral representations. **Id.** at 1036. Thus, when "prior fraudulent oral misrepresentations are alleged regarding a subject that was specifically dealt with in a written contract, the party alleging such representations must, under the parol evidence rule, also aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract." **HCB Contractors v. Liberty Place Hotel Associates**, 539 Pa. 395, 398, 652 A.2d 1278, 1279 (1995). "To require less would make a mockery of the parol evidence rule because all a party would have to do to avoid, modify or nullify [a contract] would be to aver that false representations were 'fraudulently' made." **Nicolella v. Palmer**, 432 Pa. 502, 507, 248 A.2d 20, 23 (1968).

In other words,

parol evidence of prior representations is inadmissible as to a matter covered by the written agreement with an integration clause, unless the parties agreed that those representations would be added to the written agreement but they were omitted because of fraud, accident or mistake. This situation is commonly referred to as "fraud in the execution" [as] the party proffering the evidence contends that he executed the agreement because he was defrauded by being led to believe that the documents contained terms that were actually omitted therefrom.

> ***Blumenstock, supra*** at 1036 (internal citations omitted). "The effect of an integration clause is to make the parol evidence rule particularly applicable. Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." ***1726 CherryStreet Partnership by 1726 Cherry Street Corp. v. Bell AtlanticProperties, Inc.***, 439 Pa. Super. 141, 653 A. 2d. 663, 665 (Pa. Super. 1995), *appeal denied*, 544 Pa. 647, 664 A.2d 976 (1995).

***Hart***, 884 A.2d at 340-341.[6]

Here, the parties' Agreement of Sale provided the following:

17. REPRESENTATIONS:

(A) In entering into this Agreement, Buyer has not relied upon any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Agents or their employees unless expressly incorporated or stated in this Agreement:

(B) It is understood that Buyer has inspected the property, or hereby waives the right to do so, and has agreed to purchase it in its present condition. Buyer acknowledges that the Agents have not made an independent examination or or determination of the structural soundness of the property, the age or condition of the components, environmental conditions, the permitted uses, or of conditions existing in the locale where the property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) **It is further understood that this agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this agreement shall not be altered,**

---

[6] ***See also Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425 (Pa. 2004)*; **Youndt v. First Nat'l Bank***, 868 A.2d 539 (Pa. Super. 2005).

**amended, changed or modified except in writing executed by the parties.**

Agreement of Sale, 1/17/2001, at 2 (emphasis added).

> Based on the agreement, the trial court determined:
>
> [T]he fraudulent inducement claim was independently precluded due to the integration clause that the parties included in their contract. *Section 17(C)* of the parties' contract indicated that the Agreement encompassed the whole agreement between the Seller and [t]he Buyer and that there were no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning the sale. *(Agreement of Sale, Page 2, Section 17(C))*[.] Of note, the contract was drafted by [Perkins'] agent; [Venezia] was unrepresented in the transaction. Based upon Section 17(C), [Perkins was] precluded from bringing in any evidence of the acreage of the property other than that which was included in the Agreement itself. [Perkins] drafted and then signed an Agreement and Addendum, containing an integration clause which clearly stated that the document encompassed the entire agreement between the parties. Based upon the same, the court properly determined that [Perkins] were precluded from arguing otherwise.

Trial Court Opinion, 11/22/2017, at 6-7 (emphasis removed).

Consistent with the analysis set forth in **Hart**, and the integration clause provided in the Agreement of Sale, there is no reason to disturb the trial court's dismissal of Perkins' fraud-in-the-inducement claims, and their argument does not persuade us otherwise. The contract explicitly states that no such representations are included in its terms. Accordingly, Perkins' final argument fails. Therefore, we conclude the trial court did not err in granting Venezia's motion *in limine* and motion for summary judgment with respect to this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/18